UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS OF CALIFORNIA, A FEDERALLY RECOGNIZED INIDAN TRIBE,<br><br>　　　　　Defendant, | CASE NO. 1:14-CV-01593-LJO-SAB<br><br>ORDER DENYING REID FACTION'S MOTION FOR ORDER TO SHOW CAUSE (DOC. 58) |

## I. INTRODUCTION

The Picayune Rancheria of Chukchansi Indians of California ("Tribe") operates the Chukchansi Gold Resort and Casino ("Casino"), in Madera County, California pursuant to a class III gaming compact with the State of California ("State"). An intra-tribal dispute exists among various Tribal members, which has led to three or more separate groups claiming leadership rights over the Tribe and rights to control the Casino. Three of these groups have made appearances through separate counsel in this case: the Lewis/Ayala Faction; the McDonald Faction; and the Reid Faction.[1]

On October 9, 2014, the intra-tribal dispute led to an armed conflict on the grounds of the Casino. As a result, on October 10, 2014, the State petitioned for, and this Court issued, a temporary restraining order ("TRO"), restraining and enjoining, among other things, the operation of the Casino,

---

[1] The competing Tribal groups refer to themselves by various titles, frequently including the term "Council," while referencing others as "Factions." For the sake of consistency, the Court refers to all the groups as "Factions." In so doing, the Court expresses no opinion as to the validity or invalidity of any group's claims regarding Tribal governance.

1

any further attempts to repossess or take control of the Casino, and/or the deployment of armed personnel of any nature (other than State, County, or federal law enforcement) within 1,000 yards of the Casino and nearby properties. Doc. 5. The TRO was modified slightly in open Court at an October 15, 2014 hearing to permit certain Casino operations to move forward, including those required to secure cash from the Casino floor. *See* Docs 16 & 21.

On October 29, 2014, the Court converted the TRO to a preliminary injunction ("PI") that enjoined all tribal factions from "[a]ttempting to disturb, modify or otherwise change the circumstances that were in effect at the Casino as of the afternoon of October 8, 2014," including "attempting to repossess, or take control of the Casino in whole or in part." Doc. 48 at 9. However, "[p]ayments in the ordinary course of business, including mandatory fees to the gaming commission actually supervising the Casino's operations on October 8, 2014, and per capita tribal distributions based upon the Tribe's membership list as of December 1, 2010, that are made in equal amounts," were deemed not violative of the PI. *Id*. The PI did prohibit "discretionary payments ... to any group claiming to be the duly constituted tribal council or claiming control over tribal matters." *Id*. Additional terms of the PI imposed a weapons prohibition within the general vicinity of the Casino; prohibited the removal of documents from the Casino and called for the return of documents previously removed; and prohibited operation of the Casino "unless and until it is established before this Court that the public health and safety of Casino patrons, employees, and tribal members can be adequately protected from the violent confrontations and threats of violent confrontation among the tribal groups disputing leadership of the Tribe and control of the Casino." *Id*. at 9-10. This latter prohibition was deemed to "have no further force and effect if the [National Indian Gaming Commission] issues an order lifting its Closure Order and, within one-half court day thereof, the State does not object to reopening the Casino." *Id*.

Before the Court for decision is the Reid Faction's motion for an order to show cause why the members of the Lewis/Ayala faction, who controlled the Casino floor prior to the October 9 conflict and retained at least some control of Casino finances after the conflict, should not be held in contempt for

2

violating this Court's orders. Doc. 58. In addition, the Reid Faction requests an order compelling the Lewis/Ayala Faction to: (a) issue per capita payments to all Tribal members on the 2010 membership list who have not already received per capita payments in an amount equal to the distributions already issued to others; and (b) return to the originating Tribal bank account certain payments the Reid Faction believes were improperly made. *Id*. Finally, the Reid Faction requests a full accounting of all distributions of Tribal moneys by ay Tribal Faction, individual Tribal member, bank, or other entity since October 15, 2014, and an order appointing a receiver pursuant to Federal Rule of Civil Procedure 66 and Local Rule 232. *Id*.

## II. DISCUSSION

### A.   Jurisdiction.

Jurisdiction exists in this case pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii), a provision of the Indian Gaming Regulatory Act ("IGRA"), which provides in pertinent part that the "United States district courts shall have jurisdiction over ... any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact...." Specifically, the State alleged and the Court preliminarily found that the Tribe was operating class III gaming activities in the Casino in violation of the Section 10.1 of the Compact, which provides that the "Tribe will not conduct Class III gaming in a manner that endangers the public health, safety, or welfare...." *See* Doc. 48 at 2. The Court found that the armed conflict on October 9, 2014 created a significant danger to public health and safety in breach of Section 10.1 of the Compact. *Id*. at 7. In addition, the Court found that, at least as of October 29, 2014, the parties' inability to resolve their ongoing intra-tribal dispute over Tribal governance indicates that the underlying impetus for the armed conflict had yet to dissipate. *Id*.[2]

---

[2] Alternatively, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. As the Ninth Circuit held in *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1056 (9th Cir. 1997), Tribal-State compacts are "creation[s] of federal law." Therefore, one party's claim to enforce a compact arises under federal law and is cognizable under 28 U.S.C. § 1331. *See id*.

Because of the nature of the Compact language upon which this Court's jurisdiction rests, the injunctive relief in place in this case is limited by the scope of the safety hazard addressed by the injunction. There is no question that this Court would have jurisdiction to issue an order to show cause re contempt if any tribal faction violated this Court's weapons ban on Casino grounds or the prohibition against re-opening of the Casino without consent of the NIGC and the State. However, the safety-related concern addressed by this Court's orders related to disposition of funds has dissipated. Provisions related to Casino funds were added to the TRO and extended in the PI in large part because the emergency closure of the Casino left a large amount of cash on the Casino floor. In the interest of safety, that cash needed to be removed and secured, rather than left in place. In order to best preserve the status quo with regard to these funds, the Court returned control over the Casino's funds to the Lewis/Ayala Faction, but imposed certain conditions upon the use of those Casino funds. At the time, each party recognized that the Court walked a jurisdictional tightrope. While this Court has jurisdiction to address safety concerns pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii) and the terms of the Compact, it does not have jurisdiction to resolve any intra-tribal governance dispute. It is through this lens that the Court addresses the Reid Faction's request.

**B.      Request for Order to Show Cause Re Contempt.**

The Court has inherent authority to enforce its orders through institution of civil contempt proceedings. *See, e.g., United States v. United Mine Workers of Am.*, 330 U.S. 258, 294 (1947); *Primus Auto Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). "Intent is not an issue in civil contempt proceedings." *Donovan v. Mozzola*, 716 F.2d 1226, 1240 (9th Cir. 1993). In advancing its request for an order to show cause re contempt, the Reid Faction contends that the Lewis/Ayala Faction has violated the Court's order in two ways: first, by making per capita payments only to select Tribal members; second, by using nearly $1,000,000 in Casino revenue to hold a General Council Meeting.[3]

---

[3] In its opening brief, the Reid Council asserted, on information and belief, that the Lewis Ayala Council (a) was "funneling large amounts of Tribal funds into the personal bank accounts of its members and supporters"; (b) made discretionary

With respect to the per capita payments, the Lewis/Ayala Faction admits to the complained-of conduct, but offers an explanation for its actions. Specifically, the Lewis/Ayala faction concedes that it <u>issued</u> equal per-capita checks to every member listed in the Tribe's 2010 membership roll, but <u>withheld distribution</u> of checks made out to <u>certain individuals</u> allegedly rendered ineligible to receive distributions after 2010. The Lewis/Ayala Faction claims that this was done because there were concerns that distributing per capita payments to individuals who might no longer be eligible members of the tribe could violate the IGRA and tribal law. Declaration of Michael Wynn, Doc. 61-1, at ¶ 10. Those withheld checks are being held in escrow in a Tribal bank account until such time as any conflict in the legal mandates regarding distributions is resolved or the allegedly ineligible individuals otherwise become active members of the Tribe in good standing. Doc. 61 at 6.

The Reid Faction rejoins that the Lewis/Ayala Faction had ample opportunity to seek an amendment to this Court's order(s), but failed to do so. In fact, the Reid Faction asserts that the Lewis/Ayala Faction indicated in November that it would seek leave from this Court to modify the terms of the pending injunction to specifically permit the escrow arrangement noted above. Doc. 63 at 2. No such request was ever received. Nevertheless, the Court declines to issue an order to show cause regarding this aspect of the Reid Faction's allegations, particularly in light of the fact that this Court is without jurisdiction to resolve intra-Tribal disputes. The approach taken by the Lewis/Ayala Faction is a reasonable one that preserves funds for all those listed on the 2010 membership list, while at the same time protects against the chance of improperly allocating per capita payments to individuals who may later be deemed in another forum ineligible for such payments. The Court has done everything it can do to avoid interfering in the ongoing tribal governance dispute while still fulfilling its obligations to protect public health and safety. In so doing, the Court entered certain orders to minimize harm to

---

payments to its "own members"; (c) made payments to the Lewis/Ayala Council's attorneys as well as defense attorneys representing Tex McDonald and Vernon King in connection with the defense of the state criminal prosecution that stemmed from the October 9, 2014 armed conflict at the Casino; and (d) made non-mandatory payments to members of the Lewis/Ayala Council's gaming commission. Doc. 58 at 8-9. However, the Reid Council appears to have abandoned these claims, as they are not mentioned in the Reply.

members of the tribe who depend on Casino revenue, including the order to distribute per capita payments to all those listed on the 2010 membership rolls. At this point, however, the Court will not interfere in the Lewis/Ayala Faction's facially reasonable approach to reconciling the competing demands of this Court's order and other legal constructs.

The Court next turns to the Reid Faction's second assertion – that the Lewis/Ayala faction improperly used nearly $1,000,000 in Casino revenue to hold a Quarterly General Council meeting. The majority of the allegedly improper payments apparently consisted of $1,000 "travel stipends" paid to tribal members who attended a January 24, 2015 General Council Meeting. The Lewis/Ayala Faction argues these payments were made pursuant to a provision in this Court's PI order that "[p]ayments in the ordinary course of business" would not violate the PI. The Lewis/Ayala Faction maintains that expenses incurred in connection with the General Council Meeting, including the $1,000 travel stipends, were made "in the ordinary course of business," because they were "processed" in compliance with a New York Court Order in place regarding withdrawals from the Casino's operating account. Doc. 61 at 6. But, the Lewis/Ayala Faction failed to provide a copy of the relevant New York Court order, nor explain how the General Council meeting expenses qualify as payments made in the ordinary course of business.

The Reid Faction disputes that the General Council meeting expenses were incurred "in the ordinary course of business," Doc. 63 at 3-6, and attached the July 2, 2013 preliminary injunction order issued by the Honorable Melvin L. Schweitzer, a Judge of the Supreme Court of the State of New York for the County of New York. That order imposed extensive restrictions upon the distribution of funds from Casino operating revenue, limiting payments to only approved vendors and employees. Declaration of James Qaqundah, Doc. 63-1, Exhibit A.[4] Nothing in that order or its attachments appears to justify the Lewis/Ayala Faction's conclusion that the General Council Meeting expenses were made "in the ordinary course of business."

---

[4] The Court notes that it is not entirely clear whether Judge Schweitzer's preliminary injunction order is still in effect or whether and to what extent Judge Schweitzer's order overlaps with this Court's orders.

There can be no doubt that the Lewis/Ayala Faction's actions show a bad faith response to this Court's order. But, again, the present dispute extends to matters that do not fall squarely within this Court's jurisdiction. The Casino's cash has been secured. The Casino remains closed. The public cannot possibly be endangered unless and until the Casino is re-opened under continued hostilities. This Court was forced to put it's toe in the door when presented with an emergency situation, but it will not swing the door wide open and walk into an area where it is not permitted to tread. Accordingly, this Court declines to issue an order to show cause regarding the expenditure of Casino revenue at the General Council Meeting. The misuse of funds by a tribal faction is beyond the jurisdiction of this Court.[5] For the same reasons, this Court declines to order an accounting and/or appoint a receiver.

### III. CONCLUSION

For the reasons set forth above, the Reid Council's motion is DENIED IN ITS ENTIRETY.

**SO ORDERED**
**Dated: February 10, 2015**

                                         **/s/ Lawrence J. O'Neill**
                                         **United States District Judge**

---

[5] It is possible, although far from clear, that the New York Court's retention of jurisdiction might extend to this matter.