KAMALA D. HARRIS
Attorney General of California
SARA J. DRAKE
Senior Assistant Attorney General
WILLIAM L. WILLIAMS, JR., State Bar No. 99581
Deputy Attorney General
WILLIAM P. TORNGREN, State Bar No. 58493
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 323-3033
  Fax: (916) 327-2319
  E-mail: William.Torngren@doj.ca.gov
*Attorneys for Plaintiff State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

(FRESNO DIVISION)

| | |
|---|---|
| **STATE OF CALIFORNIA,**<br><br>                              Plaintiff,<br><br>     v.<br><br>**PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS OF CALIFORNIA, A FEDERALLY RECOGNIZED INDIAN TRIBE,**<br><br>                              Defendant. | Case No. 1:14-CV-01593 LJO SAB<br><br>**JOINT SCHEDULING REPORT**<br><br>Date: April 21, 2015<br>Time: 2:30 p.m.<br>Courtroom Nine — 6th Floor<br>Before the Honorable Stanley A. Boone<br>Magistrate Judge of the United States District Court |

Pursuant to the Court's Order Setting Mandatory Scheduling Conference, the parties submit the following joint scheduling report.

**The Parties and their Representation.** The parties to this action are the State of California (State) and the Picayune Rancheria of Chukchansi Indians of California (Tribe). The State is represented by Deputy Attorneys General William P. Torngren and William L. Williams, Jr. Because an intra-tribal leadership dispute exists, three groups presently claim to speak

1

exclusively for the Tribe.[1] Even though one of the three groups has been recognized by the United States for purposes of government-to-government relations, none of the three groups recognizes the authority of the other groups to speak for the Tribe. Alphabetically, the groups are:

- The 2010 Interim Tribal Council[2] is led by Chairman Reggie Lewis and includes Dora Jones, Chance Alberta, Jennifer Stanley, Nancy Ayala, Morris Reid, and Nokomis Hernandez. The 2010 Interim Tribal Council maintains that it is the lone Tribal leadership group in light of: (1) the February 9, 2015 Order Making Decision Effective Immediately as issued by the Interior Board of Indian Appeals (IBIA) for the United States Department of Interior; (2) the March 18, 2015 letter from the Bureau of Indian Affairs (BIA) affirming an award to the Tribe, in response to the 2010 Interim Tribal Council's application for the same; and (3) the March 24, 2015 letter from the National Indian Gaming Commission (NIGC) to the 2010 Interim Tribal Council affirming the NIGC's recognition of the 2010 Interim Tribal Council. Robert Rosette of Rosette, LLP is the group's principal attorney and has been since the inception of this matter. (See, e.g., ECF 21, 4:18-25, see also ECF 53, 5:1-5).

- McDonald Group. Tex McDonald claims that this group is the Tribe's legally constituted leadership pursuant to applicable Tribal law. Lester J. Marston of Rapport and Marston is the group's principal attorney.

---

[1] Previously, a fourth group, often referred to as the Lewis/Ayala Group (also represented principally by Robert Rosette, of Rosette, LLP), claimed authority as the "Unification Council" pursuant to Tribal Law. Since recognition of the 2010 Interim Tribal Council by the Interior Board of Indian Appeals, the National Indian Gaming Commission, and the United States Government through award of a contract under Public Law 93-638 as described herein, this group presently takes no position regarding the matters discussed herein. However, the Lewis/Ayala Group was involved in the events at issue in this suit, and for that reason it is referenced herein for contextual purposes.

[2] Because the 2010 Tribal Council was designated by the February 11, 2014 Decision of the BIA Pacific Regional Director as the body with which it would conduct business on an interim basis, it will be referred to hereinafter as the "2010 Interim Tribal Council."

- Reid Group. Led by Morris Reid, the Reid Group claims that it is the Tribe's legally constituted leadership pursuant to applicable Tribal law. The Reid Group acknowledges that the BIA Pacific Regional Director recognized the 2010 Tribal Council on an interim basis for government-to-government purposes in an appealed decision that was placed into immediate effect on February 9, 2015. John M. Peebles of Fredericks Peebles & Morgan LLP is the group's principal attorney.

Additionally, Judge O'Neill granted the pro hac vice admission of Gary J. Montana of Montana & Associates LLC, who then represented the "Distributees." In his pro hac vice petition, Mr. Montana declared that he is "the attorney for certain direct descendants of the Mary An [Ann?] Ramirez and Gordon Wyatt families . . . , the original founders of the Picayune Rancheria who are the legally claiming governmental faction . . . ." That group, however, has not yet asserted in this action that it alone speaks for the Tribe or is the Tribe's legally constituted leadership. On March 11, 2015, the Tribal Council Board of Distributees advised the Court that it had relieved Mr. Montana as counsel. On March 16, 2015, the Court issued an Order that it "does not find good cause to continue the scheduling conference beyond April 21, 2015." The Court directed the Distributees Group to file a notice of substitution of counsel once new counsel is retained. To date, none of the parties to this joint scheduling report has been notified of, or contacted by, new counsel for the Distributees Group.

1. **SUMMARY OF FACTUAL AND LEGAL CONTENTIONS.**

**The State's Contentions.** The State alleges that the Tribe breached the tribal-state class III gaming compact (Compact) by, among other things, failing to (a) protect the public health, safety, and welfare and (b) ensure the safety of patrons and employees at, and any other person in, the Tribe's gaming facility. The State seeks injunctive relief, as well as a declaration that the Tribe breached the Compact. The State's action arises from the McDonald Group's incursion into, and occupation of, properties connected, or close, to the casino on October 9, 2014. The McDonald Group employed an armed force that entered those properties with firearms drawn, handcuffed security guards, used tasers, used force, and threatened to use deadly force. Security

forces, some of whom carried firearms and who were employed by the Lewis/Ayala Group, resisted and used tasers. This violent confrontation was the culmination of several years of intra-tribal leadership disputes and spilled over into the gaming facility. The Court issued a preliminary injunction. Additionally, the NIGC issued an order shutting down the casino.

The State defers to the Tribe to resolve its intra-tribal dispute, but seeks to protect the public health, safety, and welfare and the safety of the patrons and employees at, and any other person in, the Tribe's gaming facility.

**The 2010 Interim Tribal Council's Contentions.** The 2010 Interim Tribal Council has not answered or otherwise responded to the State's complaint. Similar to the positions taken by the Unification Council in its opposition to the State's motions for a temporary restraining order and preliminary injunction, the 2010 Interim Tribal Council now contends that: (1) it alone is the duly empowered tribal leadership; (2) it agrees with certain injunctive provisions; (3) the McDonald Group is to blame for the events leading up to, and underlying, the State's suit; and (4) the 2010 Interim Tribal Council should be allowed to reopen the casino.

With respect to its contention that it alone is the duly empowered Tribal leadership, the 2010 Interim Tribal Council relies upon three significant developments that have occurred since the parties were last before this Court.

First, on February 9, 2015, in its Order Making Decision Effective Immediately, the IBIA expressly affirmed that the United States immediately recognizes the 2010 Interim Tribal Council as the only group authorized to act on behalf of the Tribe for purposes of government-to-government relations.

Second, on March 18, 2015, in light of the IBIA's February 9, 2015 order and as affirmation of the government-to-government relationship now existing solely between the 2010 Interim Tribal Council and the United States, the BIA granted the 2010 Interim Tribal Council's application for federal grant funds under Public Law 93-638 (Contract Number A15AV0039 for Fiscal Year 2014/2015).

Finally, on March 24, 2015, and in light of the IBIA's decision recognizing the 2010 Interim Tribal Council and the Public Law 93-638 award by the United States to the 2010 Interim

4

Tribal Council, the NIGC issued a letter affirming that it is actively working with the 2010 Interim Tribal Council alone on resolution of all matters that led to the NIGC's notices of violation and related closure order in October 2014, so that the casino may reopen in a safe, controlled, and regulated manner – under the leadership of the 2010 Interim Tribal Council – as soon as possible.

In light of the above-stated facts, the 2010 Interim Tribal Council also contends that no other group has standing to be before this Court in this matter. Any statements or arguments made by such groups only add confusion to an already volatile and extremely complex matter. Accordingly, the 2010 Interim Tribal Council urges this Court to disregard any statements submitted by any others who claim to speak with any Tribal authority. The 2010 Interim Tribal Council further respectfully submits that this Court – like the NIGC – must defer to the agencies that have properly identified the leadership group that the United States will recognize for government-to-government relations, and recognize that the 2010 Interim Tribal Council is the lone group authorized to speak on behalf of the Tribe for such purposes.

The 2010 Interim Tribal Council asserts that any persons in the Unification Council's security forces who carried firearms did so pursuant to a protocol agreed upon between the Madera County Sheriff's Office and casino management. The 2010 Interim Tribal Council further asserts that the Unification Council's security forces resisted and used tasers in self-defense of the McDonald Group's incursion.

The 2010 Interim Tribal Council asserts, without objection from the State or the Court, that the Court cannot determine the duly empowered tribal leadership and the Tribe's rightful representative, which are exclusively tribal prerogatives.

**The McDonald Group's Contentions.** The McDonald Group has not answered or otherwise responded to the State's complaint. In its opposition to the State's motions for a temporary restraining order and preliminary injunction, the McDonald Group contended that (1) it is the duly empowered tribal leadership, (2) the Tribe has sovereign immunity from this suit, (3) the McDonald Group's tribal police force was acting within its powers in entering the properties and handcuffing the Lewis/Ayala Group's security forces, (4) any violence was the fault of the

5

Madera County Sheriff and the Lewis/Ayala Group's security forces, (5) the McDonald Group has the capability of maintaining the public health, safety, and welfare and ensuring patrons' and employees' safety, and (6) no injunction was required or proper.

The McDonald Group asserts, without objection from the State or the Court, that the Court cannot determine the duly empowered tribal leadership and the Tribe's rightful representative, which are exclusively tribal prerogatives.

Finally, The McDonald Group asserts that this Court lacks jurisdiction over this matter because this is a breach of contract action that does not give rise to 28 U.S.C. § 1331 jurisdiction and that breach of the public safety provisions of the Compact, if one occurred, does not constitute the conducting of a "Class III gaming Activity" conducted in violation of the Tribe's compact that gives the Court jurisdiction over this case under 25 U.S.C. § 2710.

**The Reid Group's Contentions.**  The Reid Group has not answered or otherwise responded to the State's complaint.  At the hearings on the State's motions for a temporary restraining order and preliminary injunction, the Reid Group contended that (1) it is the duly empowered tribal leadership, and (2) the violence at the casino and Tribal properties is the result of the Lewis/Ayala and McDonald Groups' repeated takeovers of the casino, as well as the absence of a recognition of an interim Tribal government by the Department of the Interior.

On September 23, 2014, the Reid Group filed an action in the Northern District of California alleging:  (1) the Department of the Interior is legally required to recognize an interim Tribal government during an intra-Tribal dispute; (2) gaming by an entity not recognized by the Department of the Interior as the Tribe's government constitutes a violation of IGRA and the Compact; (3) the NIGC had abdicated its responsibilities in taking enforcement action in response to the IGRA violations caused by the operation of the Tribe's casino by the unrecognized Lewis/Ayala and McDonald Groups; and (4) the Governor and other State agencies and officials had abdicated their responsibilities in failing to take enforcement action in response to the Compact violations caused by the operation of the Tribe's casino by the unrecognized Lewis/Ayala and McDonald Groups.  The Reid Group dismissed its claims in the Northern District action against the Governor and other State agencies and officials without prejudice.  On

1  February 3, 2015, United States District Judge Richard Seeborg of the Northern District of
2  California granted the federal defendants' motion to dismiss, without prejudice, on the grounds
3  that the Department of the Interior's delay is not yet unreasonable and the grounds that the
4  casino's closure has rendered the claims against the NIGC moot. Judge Seeborg also granted the
5  Lewis/Ayala Faction's unopposed motion to intervene. *See Picayune Rancheria of Chukchansi*
6  *Indians, et al., v. U.S. Dept. of the Interior, et al.*, Case No. 3:14-cv-04273-RS, Docket No. 32
7  (filed Feb. 3, 2015).
8        The Reid Group asserts, without objection from the State or the Court, that the Court
9  cannot determine the duly empowered tribal leadership and the Tribe's rightful representative,
10 which are exclusively tribal prerogatives.
11       **The Distributees Group's Contentions.** The Distributees Group has not answered or
12 otherwise responded to the State's complaint. Nor has the Distributees Group filed, or moved to
13 file, a complaint in intervention. The Distributees Group first appeared in connection with the
14 hearing on the State's motion for a preliminary injunction, but did not submit any pleading. At
15 the hearing, the Distributees Group appeared to contend that no resolution of the case was
16 possible without its participation. The Distributees Group did not participate in preparing this
17 joint scheduling report.
18 2.    **PROPOSED DEADLINE FOR AMENDMENTS.**
19       Even though each group has appeared in connection with the State's motions for a
20 temporary restraining order and/or preliminary injunction, no group has filed an answer or
21 otherwise responded to the State's complaint.
22       **Possible Amended Complaint.** The State presently is considering whether to file an
23 amended complaint to clarify its allegations, but not change the substance of its claims for relief.
24 The State proposes to file any amended complaint on or before April 30, 2015.
25       **Responsive Pleadings.** The Tribe's response to the complaint, or amended complaint,
26       shall be filed within twenty days of the State's filing either an amended complaint or
27       statement that it will not file an amended complaint.
28

3. **SUMMARY OF CONTESTED AND UNCONTESTED FACTS.**

    a. The following facts are uncontested:

        1) The Tribe and the State entered into the Compact, which was ratified by the California Legislature and accepted by the United States Secretary of the Department of the Interior. The Compact is a valid and enforceable agreement between the Tribe and the State.

        2) The Compact defines gaming facility to include any building in which class III gaming activities or gaming operations occur, or in which the business records, receipts, or other funds of the gaming operation are maintained, as well as "all rooms, buildings, and areas, including parking lots and walkways, a principal purpose of which is to serve the activities of the Gaming Operation . . . ."

        3) The Compact defines gaming operation to mean the business enterprise that offers and operates class III gaming activities.

        4) The Compact provides that the Tribe, through its gaming agency, shall promulgate and enforce rules and regulations that ensure the physical safety of gaming operation patrons and employees, and any other person while in the gaming facility.

        5) The Compact provides that the Tribe will not conduct class III gaming in a manner that endangers the public health, safety, or welfare.

        6) The Compact provides a waiver of sovereign immunity for suit if (a) the dispute is limited to issues arising under the Compact, (b) neither side makes a claim for monetary damages, and (c) no person or entity other than the Tribe and the State is a party to the action.

        7) The Compact allows for injunctive and declaratory relief, and expressly does not allow monetary damages.

        8) The Compact requires that all gaming operations under the Compact be owned by the Tribe.

9) The Compact defines the Tribe to include any authorized official or agency of the Tribe.

10) The Tribe's gaming facility includes a hotel and casino that are adjacent and open to each other. They are referred to as the hotel-casino in this report. The hotel-casino is known as the Chukchansi Gold Resort & Casino and is located in Coarsegold, California.

11) An intra-tribal dispute exists among the Tribe's members. At least three groups presently claim to be the Tribe's duly empowered leadership. Each group claims to speak exclusively for the Tribe. None of the three groups recognizes, or acknowledges, the authority of the other groups to speak for the Tribe. The three groups presently are the 2010 Interim Tribal Council, the McDonald Group, and the Reid Group.

12) The intra-tribal dispute began following tribal elections in 2011. Since the intra-tribal dispute began, allegiances and alignments have changed from time-to-time. At one time, Reggie Lewis and Morris Reid were aligned in a group, and Nancy Ayala and Tex McDonald were aligned in another. Reggie Lewis and Nancy Ayala have aligned and separated on various occasions. Since the dispute began in December 2011 and until February 9, 2015, the Department of the Interior had not finally recognized a Tribal government on an interim basis or otherwise. Internally, however, the BIA Central California Agency Superintendent Troy Burdick, through a letter dated May 16, 2013, addressed to Morris Reid, established that the Lewis/Ayala Group's December 2012 election was conducted according to the Tribe's laws, and that the seven council members elected through that process and named in that letter were recognized as the Tribe's governing body and the body with which the United States would conduct government-to-government relations (Superintendent's Determination). That determination was appealed. In a decision dated

February 11, 2014, and that is described below, the BIA Pacific Regional Director overturned the Superintendent's Determination.

13) On December 30, 2013, the United States District Court for the District of Arizona held that one group, then led by Nancy Ayala, in the intra-tribal dispute did not have standing to sue federal officials and agencies because the group was not recognized by the BIA as the Tribe's rightful representative. The court found that a final BIA determination of tribal control had not been made.

14) On February 11, 2014, the United States Department of the Interior, BIA, Pacific Regional Office, issued a decision concluding that "it has not been possible to ascertain which faction[']s actions are consistent with Tribal Law" and that "the BIA does not have authority to determine the Tribe's permanent leadership." That decision vacated the Superintendent's Determination to recognize the results of the December 1, 2012 election. The February 11, 2014, decision further concluded that "the Bureau of Indian Affairs, Pacific Region, will conduct business, on an interim basis, with the last uncontested Tribal Council elected December 2010 consisting of: Dora Jones, Chance Alberta, Jennifer Stanley, Nancy Ayala, Morris Reid, Reggie Lewis, and Nokomis Hernandez, until such time as the issue is resolved in accordance with the Tribe's laws."

15) The February 11, 2014 decision was appealed on February 13, 2014, by the McDonald Group, followed by appeals by several other interested parties. On April 15, 2014, the IBIA denied the Regional Director's motion to make the February 11, 2014 decision effective immediately. The result was that no group was recognized as the Tribe's duly empowered leadership. The IBIA "strongly encourage[d] the tribal factions to commit themselves to good faith efforts that will lead to the voluntary, and hopefully, lasting, resolution of this dispute."

16) As of October 9, 2014, the United States Department of the Interior did not recognize any of the three groups, or any other group, as the duly empowered leadership of the Tribe. As of October 9, 2014, no other federal agency recognized any of the three groups, or any other group, as the duly empowered leadership of the Tribe.

17) As of noon on October 9, 2014, the Unification Council occupied the ninth and eleventh floors of the hotel-casino. Its gaming commission's offices were located on the first floor of the hotel-casino. The Unification Council also controlled the Butler Building, which is near, but not connected to, the hotel-casino. The Butler Building houses, among other things, computer servers and records for the gaming operation. The Lewis/Ayala Faction asserts that the Butler Building is part of the Tribe's gaming facility.

18) As of noon on October 9, 2014, the casino's operation was under the oversight of a tribal gaming commission appointed by the Unification Council. The casino's security was provided by private security personnel under contract with the Unification Council's tribal gaming commission.

19) As of noon on October 9, 2014, the hotel's operation was under the oversight of the Unification Council.

20) As of noon on October 9, 2014, the McDonald Group controlled the Tribe's government compound, which is near, but not connected to, the hotel-casino. The Tribe's government compound houses the tribal government offices and is located between the Butler Building and the hotel-casino.

21) As of noon on October 9, 2014, the McDonald Group and the Unification Council each had a tribal gaming commission, tribal council, security forces, and other tribal agencies. The 2010 Interim Tribal Council asserts that only the Unification Council's tribal gaming commission was actually engaged in regulating gaming activity at that time. As of noon on October 9, 2014, the Reid Group also had a tribal council. None of these tribal councils was

recognized by the United States Department of Interior or any other federal agency as the Tribe's Tribal Council.

22) In the evening of October 9, 2014, security forces hired by the McDonald Group arrived at the valet and patron-loading area of the hotel-casino. They emerged from multiple vehicles. All of the security forces were armed with a variety of weapons, including handcuffs, mace/pepper spray, tasers, and firearms. The security forces were accompanied, or later joined, by members, and agents, of the McDonald Group. The State and the 2010 Interim Tribal Council assert that some of the McDonald Group security forces had firearms drawn as they approached the hotel-casino.

23) The McDonald Group's security force was not approved by, or registered with, any federal agency. The McDonald Group asserts that attorneys representing it and the head of its security force met with and/or corresponded with the Sheriff, the Sheriff's attorney, and the District Attorney, and informed them of the McDonald Group's legal position with regard to its jurisdiction to maintain public safety on the Reservation and provided them with relevant ordinances that were the basis for the assertion of jurisdiction. The McDonald Group asserts that neither the Sheriff, nor his attorney, nor the District Attorney disputed the McDonald Group's interpretation with regard to its jurisdiction.

24) The McDonald Group had prepared an operation plan, entitled "Sovereign Return," for its security force. That plan's stated object was to secure tribal gaming commission offices located in the hotel-casino. One secondary object of the plan was to assist in providing audits necessary to comply with NIGC requests. The operation plan included a deadly force policy, which provided in part that, "officers do not draw or exhibit their firearms unless circumstances create strong reasonable cause to believe that it may be necessary to lawfully use the weapon . . . ." The operation plan also required security forces to be armed.

25) During the evening of October 9, 2014, the McDonald Group's security force handcuffed and detained members of the casino security force and the Unification Council's security force. At least one member of the casino security force had a firearm. The 2010 Interim Tribal Council asserts that this was pursuant to a protocol agreed upon between the Madera County Sheriff's Office and casino management. The two security forces engaged in pushing and shoving. Tasers were fired. The State and 2010 Interim Tribal Council assert that tasers were fired by both sides. The McDonald Group asserts that tasers were fired only by the Unification Council's security forces. Firearms were drawn and pointed among the protagonists. Threats of violence were made. At least one member of the Unification Council's casino security force went to the floor. The State and 2010 Interim Tribal Council assert that he appeared to be attacked by a McDonald Group member. The McDonald Group asserts that its member was attacked and responded in self-defense.

26) During the evening of October 9, 2014, the McDonald Group's and the Unification Council's security forces had confrontations in, among other places, the valet and patron-loading area of the hotel-casino and the hotel lobby. These areas were open to, and accessible by, members of the public, including employees and patrons of the gaming operation, as well as other persons in the gaming facility.

27) The Madera County Sheriff Office responded. The State asserts that one of the McDonald Group's attorneys told the Sheriff's attorney that the McDonald Group's security force was not armed. The State further asserts that this was false and potentially endangered Madera County and State law enforcement officers responding to the events of October 9, 2014.

28) On October 10, 2014, the NIGC issued an order closing the casino.

29) On October 10, 2014, Judge O'Neill issued a temporary restraining order at the State's request.

30) On October 15, 2015, Judge O'Neill modified the temporary restraining order at the parties' request and following a hearing on the same.

31) On October 29, 2014, Judge O'Neill issued a preliminary injunction at the State's request.

32) The casino has been closed since October 10, 2014.

33) On February 9, 2015, the IBIA issued an Order Making Decision Effective Immediately. That order made the Regional Director's February 11, 2014 decision effective immediately. The IBIA stated: "In making the Decision [of February 11, 2014] effective immediately, the Board emphasizes that it makes no determination about whether, once the 2010 Council is recognized by BIA on an interim basis, an [Indian Self-Determination and Education Assistance] proposal from that Council will meet the applicable requirements in order for the Tribe to resume contracting programs and services from BIA."

34) The 2010 Interim Tribal Council consists of Dora Jones, Chance Alberta, Jennifer Stanley, Nancy Ayala, Morris Reid, Reggie Lewis, and Nokomis Hernandez.

35) On March 18, 2015, the BIA granted the 2010 Interim Tribal Council's application for federal grant funds under Public Law 93-638 (Contract Number A15AV0039 for Fiscal Year 2014/2015).

36) On March 24, 2015, in deference to both the IBIA's and BIA's immediate recognition of the 2010 Interim Tribal Council, the NIGC affirmed it is actively working with the 2010 Interim Tribal Council alone to resolve all matters that led to the NIGC's notices of violation and related closure order in October, 2014, so that the casino may reopen in a safe, controlled, and regulated manner – under the leadership of the 2010 Interim Tribal Council – as soon as possible.

37) On March 27, 2015, the NIGC conducted a call exclusively with the 2010 Interim Tribal Council's legal counsel to discuss outstanding concerns, and,

       during the call: (1) committed to providing a draft settlement agreement during the week of March 30, 2010; and (2) requested that the Tribe outline a public safety plan that specifically identifies who, upon reopening of the casino, will be providing security outside of the casino, inside the casino and in response to emergency calls for service at the casino. In light of the same, the 2010 Interim Tribal Council is consulting and working with the State to ensure that the public safety plan developed by the Tribe in consultation with the NIGC is acceptable to the State as well.

b. The following facts are contested:

    1) Whether the October 9, 2014 acts of the McDonald Group's security force, members, and agents endangered the public health, safety, and welfare.

    2) Whether the October 9, 2014 acts of the Unification Council's security force endangered the public health, safety, and welfare.

    3) Whether the October 9, 2014 acts of the McDonald Group's security force, members, and agents failed to ensure the physical safety of gaming operation patrons and employees, or any other person in the gaming facility.

    4) Whether the October 9, 2014 acts of the Unification Council's security force failed to ensure the physical safety of gaming operation patrons and employees, or any other person in the gaming facility.

    5) Whether as a result of the October 9, 2014 events and the continuing intra-tribal dispute, the Tribe was conducting class III gaming in a manner that endangered the public health, safety, and welfare.

    6) Whether as a result of the October 9, 2014 events and the continuing intra-tribal dispute, the Tribe failed to ensure the physical safety of gaming operation patrons and employees, or any other person in the gaming facility.

    7) Whether for as long as the intra-tribal dispute continues, any group can maintain the public health, safety, and welfare, and ensure the physical safety

15

Joint Scheduling Report

of gaming operation patrons and employees or any other person in the gaming facility.

4. **SUMMARY OF LEGAL ISSUES.**

    a. The following legal issues are not disputed:

        1) Venue is proper as all of the acts and omissions alleged in the complaint occurred in Coarsegold, Madera County, or elsewhere in the Eastern District of California.

        2) The Compact is a contract between the Tribe and the State. It is governed by general federal law principles. The federal law looks to, and relies upon, California contract law.

        3) Federal law establishes the standards for an injunction.

        4) Federal law establishes the standards for declaratory relief.

    b. The following legal issues are disputed:

        1) The McDonald Group disputes whether the Court has subject matter jurisdiction. The State asserts, and the Court has determined, that it has subject matter jurisdiction under 28 U.S.C. § 1331.

        2) The McDonald Group asserts that the Tribe has sovereign immunity from the State's suit. The State asserts, and the Court has determined, that Congress abrogated sovereign immunity by 25 U.S.C. § 2710(d)(7)(A)(ii) and that the Tribe waived its sovereign immunity under the Compact.

        3) The McDonald Group asserts that its security force, members, and agents had the right to use physical force, display and point firearms, and threaten to use deadly force on October 9, 2014. The Court has determined that the acts of the McDonald Group's security force, members, and agents were lawless. The State asserts that this issue is not relevant to the question of whether the Tribe breached the Compact. Further, the State asserts that none of the three groups, nor any other group, was recognized by the Department of Interior or any other federal agency as the entity with which the federal government would conduct

government-to-government relations. Additionally, the State asserts that none of the three groups, nor any other group, had an undisputed claim to legitimately exercise powers on behalf of the tribal membership consistent with tribal law. Therefore, no group had the right to use physical force, discharge tasers, display and point firearms, and threaten to use deadly force on October 9, 2014.

5.  **STATUS OF MATTERS SET BEFORE THE COURT.**

No matters are presently set before the Court.

6.  **DISCOVERY PLAN.**

a. <u>Initial Disclosures</u>. The parties will exchange initial disclosures required by Federal Rules of Civil Procedure 26(a)(1) within fourteen days following the Mandatory Scheduling Conference.

b. <u>Non-Expert Discovery Cut Off</u>. All non-expert discovery, including discovery motions, will be completed on or before February 1, 2016.

c. <u>Expert Disclosure</u>. No party anticipates that expert opinions are required in this action.

d. <u>Expert Discovery Cut Off</u>. Not applicable.

e. <u>Proposed Changes in Discovery Limits Imposed by Rules</u>. The parties agree to change the discovery limits to allow more than ten depositions per side. Otherwise, the parties do not propose any changes in the discovery limits imposed by the Federal Rules of Civil Procedure.

f. <u>Protective Order</u>. The parties do not anticipate the need for a protective order.

g. <u>Issues or Proposals Relating to Timing, Sequencing, Phasing, or Scheduling Discovery</u>. None.

h. <u>Discovery Outside the United States</u>. None.

i. <u>Anticipated Video and/or Sound Recording of Depositions</u>. The State anticipates, that it may have video or sound recordings made of certain depositions.

7.  **AGREED UPON DATES.**

a. <u>Motion Cut Off</u>. All non-dispositive and dispositive pretrial motions, except for motions *in limine* or other trial motions, shall be filed on or before March 31, 2016.

   b. <u>Pretrial Conference</u>.  June 16, 2016.

   c. <u>Proposed Trial Date</u>.  July 18, 2016.

8. **SETTLEMENT**.

  The parties participated in a mandatory settlement conference conducted by Magistrate Judge Dennis L. Beck.  They were unable to settle the case.  In response to the Unification Council's objections, the Court entered a minute order on November 20, 2014, that no further settlement conferences will be set until the group's objection is withdrawn.  (ECF 56.)

  The State and the Reid Group are open to further settlement conference in this matter.  Presently, the 2010 Interim Tribal Council is actively working with the State and engaged in what effectively amounts to settlement negotiations.  To the extent the Court may assist in the same, the 2010 Interim Tribal Council is willing to participate provided that none of the other groups be permitted to participate because the 2010 Interim Tribal Council alone is recognized by the United States as the Tribe's only governing body for purposes of government-to-government relations.

9. **JURY OR NON-JURY**.

  This is a non-jury case.  The State's suit is for injunctive and declaratory relief.

10. **NUMBER OF TRIAL DAYS REQUIRED**.

  The parties estimate seven to ten days.

11. **CONSENT TO PROCEED BEFORE A UNITED STATES MAGISTRATE JUDGE**.

  The parties will not consent to proceed before a United States Magistrate Judge.

12. **BIFURCATION OR PHASING**.

  The parties do not request bifurcation or phasing trial.

13. **RELATED CASES**.

  The 2010 Interim Tribal Council believes that the following cases, which are pending in state courts, are related cases:

 a. *Picayune Rancheria of the Chukchansi Indians v. Fredericks Peebles & Morgan LLP*, No. 34-2010-00086288-CU-PN-GDS (Cal. Superior Court, County of Sacramento) (stayed).

 b. *Wells Fargo v. Chukchansi Economic Development Authority*, No. 652140/13 (N.Y. Sup.

| | | |
|---|---|---|
| 1 | Ct.) (active) | |
| 2 | | |
| 3 | Dated: March 31, 2015 | Respectfully submitted, |

KAMALA D. HARRIS
Attorney General of California
SARA J. DRAKE
Senior Assistant Attorney General
WILLIAM L. WILLIAMS, JR.
Deputy Attorney General

Robert A. Rosette
Geoffrey M. Hash
ROSETTE, LLP

/s/ ROBERT A. ROSETTE

ROBERT A. ROSETTE

/s/ WILLIAM P. TORNGREN

*Attorneys for the Picayune Rancheria of the Chukchansi Indians, 2010 Interim Tribal Council*

WILLIAM P. TORNGREN
Deputy Attorney General
*Attorneys for Plaintiff
State of California*

Lester J. Marston
RAPPORT AND MARSTON

/s/ LESTER J. MARSTON

LESTER J. MARSTON

*Attorneys for the Picayune Rancheria of the Chukchansi Indians*

John M. Peebles
Steven J. Bloxham
James Qaqundah
FREDERICKS PEEBLES & MORGAN, LLP

/s/ JOHN M. PEEBLES

JOHN M. PEEBLES

*Attorneys for the Picayune Rancheria of the Chukchansi Indians*

Joint Scheduling Report