UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS OF CALIFORNIA, A FEDERALLY RECOGNIZED INDIAN TRIBE,<br><br>　　　　Defendant, | CASE NO. 1:14-CV-01593-LJO-SAB<br><br>ORDER DENYING LEWIS/AYALA FACTION'S MOTION FOR ORDER MODIFYING PRELIMINARY INJUNCTION (DOC. 79) |

　　The Picayune Rancheria of Chukchansi Indians of California, a federally recognized Indian Tribe ("Tribe") operates the Chukchansi Gold Resort and Casino ("Casino"), in Madera County, California pursuant to a class III gaming compact with the State of California ("Plaintiff" or "State"). An intra-tribal dispute arose among various tribal members, which led to three or more separate groups (or "Factions") claiming leadership rights over the Tribe and the rights to control the Casino. Three of these groups made appearances through separate counsel in this case: the Lewis/Ayala Faction; the McDonald Faction; and the Reid Faction.

　　On October 9, 2014, the intra-tribal dispute led to an armed conflict on the grounds of the Casino. As a result, on October 10, 2014, the State petitioned for, and this Court issued, a temporary restraining order ("TRO"), restraining and enjoining, among other things, the operation of the Casino, any further attempts to repossess or take control of the Casino, and/or the deployment of armed

personnel of any nature (other than State, County, or federal law enforcement) within 1,000 yards of the Casino and nearby properties. Doc. 5. The TRO was modified slightly in open Court at an October 15, 2014 hearing to permit certain Casino operations to move forward, including those required to secure cash from the Casino floor. *See* Docs 16 & 21.

On October 29, 2014, the Court converted the TRO into a preliminary injunction ("PI") that enjoined all tribal factions from "[a]ttempting to disturb, modify or otherwise change the circumstances that were in effect at the Casino as of the afternoon of October 8, 2014," including "attempting to repossess, or take control of the Casino in whole or in part." Doc. 48 at 9. However, "[p]ayments in the ordinary course of business, including mandatory fees to the gaming commission actually supervising the Casino's operations on October 8, 2014, and per capita tribal distributions based upon the Tribe's membership list as of December 1, 2010, that are made in equal amounts," were deemed not violative of the PI. *Id.* The PI did prohibit "discretionary payments ... to any group claiming to be the duly constituted tribal council or claiming control over tribal matters." *Id.* Additional terms of the PI imposed a weapons prohibition within the general vicinity of the Casino; prohibited the removal of documents from the Casino and called for the return of documents previously removed; and prohibited operation of the Casino "unless and until it is established before this Court that the public health and safety of Casino patrons, employees, and tribal members can be adequately protected from the violent confrontations and threats of violent confrontation among the tribal groups disputing leadership of the Tribe and control of the Casino." *Id.* at 9-10. This latter prohibition was deemed to "have no further force and effect if the [National Indian Gaming Commission ("NIGC")] issue[d] an order lifting its Closure Order and, within one-half court day thereof, the State does not object to reopening the Casino." *Id.*

Before the Court for decision is the Lewis/Ayala Faction's ("Movants"), sometimes self-referenced in their papers as the "2010 Tribal Council," motion for an order modifying the PI. Doc. 79.

2

According to Movants,[1] the Tribal leadership dispute has been resolved. Specifically, on February 9, 2015, the Interior Board of Indian Appeals ("IBIA") issued a decision putting into effect immediately the February 11, 2014 Decision of the Regional Director of the Bureau of Indian Affairs ("BIA"), which recognized the 2010 Tribal Council as the interim tribal government with which the BIA would conduct government-to-government negotiations. *See* Declaration of Dora Jones ("Jones Decl."), Doc. 79-3 at ¶ 4, Ex. A ("IBIA Order"). Shortly after the IBIA ruling, the BIA awarded to the Tribe a grant in the amount of $501,127.00, pursuant to the Indian Self-Determination and Education Assistance Act. In issuing this grant, the BIA expressly acknowledged Reggie Lewis's position as "Interim Chairman." *See* Jones Decl. at ¶ 5, Ex. B (Letter from J. Saulque to R. Lewis and attached contract award (Mar. 18, 2015)).

Formal recognition by the BIA led to formal recognition by the NIGC. In a letter regarding settlement discussions to resolve the alleged violations of the Indian Gaming Regulatory Act, the Chairman of the NIGC stated that the BIA recognition "satisfies my concerns sufficiently to the extent we can begin negotiations [to reopen the Casino]." *See* Jones Decl. at ¶ 6, Ex. C (Letter from J. Chaudhuri to R. Lewis (Mar. 24, 2015)). After receiving formal recognition, the 2010 Tribal Council began to negotiate with the NIGC to facilitate the reopening of the Casino. *Id.* at ¶ 6. Various draft settlement agreements have already been exchanged. Declaration of Robert A. Rosette ("Rosette Decl."), Doc. 79-2, at ¶ 3.

However, according to Movants, a major sticking point in negotiations with the NIGC has been the fact that the McDonald Faction continues to occupy certain tribal government office buildings located at 46575 Road 417 (the "Modular Complex"), directly across from the Casino. Jones Decl. at ¶ 10. Similarly, with regard to the public safety, Plaintiff has indicated that, its concern lies mainly with the fact that a group of people lacking federal recognition are occupying the Modular Complex. *See*

---

[1] In this order, the Court assumes, *arguendo*, that the factual assertions set forth in the moving papers are true.

Rosette Decl. at ¶ 4.

In an attempt to assuage the NIGC and the State of some of their public safety concerns, the 2010 Tribal Council issued Resolution #2015-41, entitled "Approval of Public Safety Protocol Regarding the Tribe's Gaming Facility." *See* Jones Decl., Ex. K ("The Public Safety Protocol") at ¶ 11.4. The Public Safety Protocol includes a set of policies and procedures regarding Casino security and security of the nearby area generally. The resolution approving the Public Safety Protocol expressly states: "in order to bolster public safety at the Gaming facility, the 2010 Tribal Council has directed the immediate clearing of all persons located in and around the Tribe's Modular Complex. Once cleared, the Tribe will keep the Modular Complex secured and unoccupied for a minimum period of six months from the date the Tribe declares the area clear of all occupants." *See* Jones Decl., Ex. K at ¶ 21. For a period of two years thereafter, the Tribe will notify the State of any proposed tribal activities to take place in the Modular Complex. *Id.* At that point, the State may ask for a meeting to confer with the Tribe regarding any proposed use. *Id.* Further, the resolution adopts a prohibition on any armed personnel within 1000 yards of the Casino (with exceptions for federal, state, and local law enforcement and armored transport personnel), as well as a moratorium on tribal governance activities (such as Tribal Council meetings) within 1000 yards of the Casino for a period of two years following the date of the Casino's reopening. *See* Jones Decl., Ex. K at ¶ 12, ¶ 19. The Tribe, through the 2010 Tribal Council, passed this resolution on July 9, 2015. Jones Decl. at ¶ 11.

According to the moving papers, the 2010 Tribal Council made several attempts to convince the McDonald Faction to vacate the Modular Complex. First, the 2010 Tribal Council issued a notice to vacate. Jones Decl. at ¶ 13, Ex. L. Movants contend the Notice to Vacate was ignored by the McDonald Faction. Instead, Movants maintain the McDonald Faction has suggested to outside parties, including the NIGC and the State, that they have no intention of leaving. *See* Rosette Decl., Ex. A; Jones Decl., at ¶ 14 and Ex. M. Specifically, in correspondence with the NIGC and the State, the McDonald Faction refers to themselves as the "on-site" Tribal Council, and further asserts that if the Casino is reopened under the

governance of the 2010 Tribal Council, the public safety will be at risk. *See* Rosette Decl., Ex. A (Ltr. from M. Davis to B. Torngren, at *1 (Apr. 6, 2015)). The McDonald Faction further urges the NIGC not to move forward with efforts to reopen the Casino because doing so will "exacerbate the current volatile conditions and potentially place lives at risk." *See* Rosette Decl., Ex. A (Ltr. from D. Featherstone to J. Chaudhuri, at *3 (Feb. 15, 2015)). The McDonald Faction also issued a warning to the NIGC that lifting the closure order will "place lives in danger by exacerbating our intra-tribal governmental dispute...." *Id.* Similarly, just recently, Tex McDonald described in a television interview how he and this group are continuing to occupy and use the Modular Complex. *See* Jones Decl., at ¶ 14, Ex. M.

It is in this context that the Lewis/Ayala Faction asks the Court to modify the PI to "clarify that no persons are permitted to occupy the [various tribal government buildings located at 46575 Road 417] until it is established that such occupation will no longer be a threat to the public safety, or until the NIGC Order is lifted." Doc. 79-4 (Proposed Order). The request is not for a clarification, but rather is for a dramatic escalation of this Court's involvement in the business and operation of the Casino. They make this request without providing any authority, jurisdictional or otherwise, to support such an intervention by this Court.

As mentioned in previous orders, jurisdiction exists in this case pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii), a provision of the Indian Gaming Regulatory Act ("IGRA"), which provides in pertinent part that the "United States district courts shall have jurisdiction over ... any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact." Specifically, the State alleged and the Court preliminarily found that the Tribe was operating class III gaming activities in the Casino in violation of the Section 10.1 of the Compact, which provides that the "Tribe will not conduct Class III gaming in a manner that endangers the public health, safety, or welfare." *See* Doc. 48 at 2. The Court found that the armed conflict on October 9, 2014 created a significant danger to public health and safety in breach of Section 10.1 of the Compact. *Id.* at 7. In addition, the Court found that, at least as of October 29, 2014,

the parties' inability to resolve their ongoing intra-tribal dispute over Tribal governance indicates that the underlying impetus for the armed conflict had yet to dissipate. *Id.*

Because of the nature of the Compact language upon which this Court's jurisdiction rests, the injunctive relief in place in this case is limited by the scope of the safety hazard addressed by the injunction. This Court indicated previously that "[t]here is no question that this Court would have jurisdiction to issue an order to show cause re contempt if any tribal faction violated this Court's weapons ban on Casino grounds or the prohibition against re-opening of the Casino without consent of the NIGC and the State." Doc. 65 at 4. However, the present Motion requests something entirely different and far more interventionist. While the facts as presented by Movants suggest escalating tension between the factions, the NIGC Order has not been lifted and the Casino is not open, so this Court does not need to intervene to protect the public from imminent danger. Instead, Movants essentially ask this Court to ratify the 2010 Tribal Council's eviction notice, thereby transforming any non-compliance by the McDonald Faction into a violation of a federal Court order. The Court can identify absolutely no authority to support such an exercise of its jurisdiction.

For the reasons set forth above, the Lewis/Ayala Faction's motion to modify the PI is DENIED IN ITS ENTIRETY *sua sponte* for lack of jurisdiction.

**IT IS SO ORDERED**
**Dated: July 21, 2015**

                              **/s/ Lawrence J. O'Neill**
                              **United States District Judge**