UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>PICAYUNE RANCHERIA OF CHUKCHANSI INDIANS OF CALIFORNIA, A FEDERALLY RECOGNIZED INDIAN TRIBE,<br><br>　　　　Defendant, | CASE NO. 1:14-CV-01593-LJO-SAB<br><br>ORDER RE OBJECTIONS FILED BY "MONICA DAVIS TRIBAL COUNCIL" |

　　On December 21, 2015, the Plaintiff, the State of California ("State"), and the Tribal Council of the Picayune Rancheria of Chukchansi Indians of California elected on October 3, 2015 ("New Tribal Council") (collectively, "Moving Parties") filed an Ex Parte Joint Request to Enter Judgment and Permanent Injunction ("Request"), Doc. 98, and an Ex Parte Application to Shorten Time ("Application"), Doc. 99. Among other things, the Request indicated that (1) the State has entered into a settlement agreement with the New Tribal Council with regard to the claims in this case, and (2) the Moving Parties desire entry of a Judgment and a Permanent Injunction embodying the terms of their agreement. The Court found that, based upon the Application, there was good cause for expedited treatment of the Request and set a deadline of 5:00 pm on December 22, 2015 for the filing of any responses to the Request. *See* Doc. 100.[1] One such response, from the so-called "Distributees" was

---

[1] On December 16, 2015, the Moving Parties gave generic notice to all parties in this case that they anticipated filing a

1

received at approximately 9:45 pm, December 21, 2015. Doc. 101. Operating under the mistaken assumption that the Distributees were the only potential objectors, the Court issued a modified Judgment and Permanent Injunction at approximately 12:30 pm, December 22, 2015, addressing the Distributees' arguments and adopting some of their recommendations. Doc. 102. At approximately 4:20 pm on December 22, 2015, an additional opposition was received from the "Monica Davis Tribal Council" ("Davis Council"). Doc. 105. This objection was timely filed according to the briefing schedule. Having fully considered the arguments made therein, the Court concludes that, even had the Davis Council's opposition been received and considered prior to entry of the Judgment and Permanent Injunction, neither the outcome nor the wording of the Judgment and Permanent Injunction would have changed.

The Davis Council, which appears to be a successor-in-interest to a group that formerly participated in this case as the "McDonald Faction" (*see* Doc. 78), raises jurisdictional objections that previously have been rejected by this court. Specifically, the Davis Council argues that neither 25 U.S.C. § 2710(d)(7)(A)(ii), a subsection of the Indian Gaming Regulatory Act ("IGRA"), nor 28 U.S.C. § 1331 provide this Court with subject matter jurisdiction over the claims brought by the State in this case. The October 29, 2014 Preliminary Injunction Order addresses these arguments directly:

> Jurisdiction exists in this case pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii), a provision of the IGRA, which provides in pertinent part that the "United States district courts shall have jurisdiction over ... any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact...." Here, the State alleges that the Tribe is operating class III gaming activities in the Casino in violation of the Compact, triggering 25 U.S.C. § 2710(d)(7)(A)(ii).
>
> The McDonald Faction objects to a finding of jurisdiction under this provision on the ground that the failure of the Tribe to provide adequate security to maintain public safety is not a "Class III gaming activity," insofar as the asserted violations have "nothing to do with what games are authorized, whether criminals are playing the games, whether the games are being played fairly, and whether the Tribe is receiving the revenues from the playing of the games." Doc. 33 at 7. The McDonald Faction

---

request for Judgment and Permanent Injunction. Doc. 97 ("Notice"). That Notice explained, generally, the nature of the Judgment and Permanent Injunction that would be requested. *Id.*

2

> offers no authority that remotely suggests the grant of jurisdiction in § 2710(d)(7)(A)(ii) is so limited. The plain language of § 2710(d)(7)(A)(ii) provides a federal forum in which either party to a Tribal-State compact may challenge operation of class III gaming conducted in violation of a compact. Such a violation is alleged here.
>
> The McDonald Faction asserts that to find jurisdiction exists in this case would require this Court to assume jurisdiction over "a full array of minor breach of contract actions; such as minor violations regarding the preparation of food, fire code violations regarding the number of overhead sprinklers, and uniform building code violations pertaining to public health and safety." Doc. 33 at 7. The Court expresses no opinion as to whether 25 U.S.C. § 2710(d)(7)(A)(ii) would provide a federal forum for such public health and safety violations. But, this Court does not hesitate to hold that where a Tribal-State compact provides that the tribe "will not conduct Class III gaming in a manner that endangers the public health, safety, or welfare....," 25 U.S.C. § 2710(d)(7)(A)(ii) provides a district court with jurisdiction to address circumstances that present imminent public health and safety danger.
>
> Alternatively, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. As the Ninth Circuit held in *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1056 (9th Cir. 1997), Tribal-State compacts are "creation[s] of federal law." Therefore, one party's claim to enforce a compact arises under federal law and is cognizable under 28 U.S.C. § 1331. *See id*. The McDonald Faction's arguments regarding *Cabazon* amount to an attempt to re-write the Ninth Circuit's decision. Specifically, the McDonald Faction argues that the issue in *Cabazon* was whether or not the IGRA prohibited the State from imposing in the *Cabazon* Tribal-State compact a tax in the form of a license fee on the plaintiff tribes' off-reservation, off-track betting facilities. Therefore, their argument continues, *Cabazon* should not control here because it concerned a claim arising directly under the IGRA, not one arising out of the compact. Doc. 33 at 3. The text of *Cabazon* explicitly holds otherwise, explaining that the IGRA issue had been resolved in favor of the tribe in a prior decision and that the remaining issue concerned enforcement of the State's agreement in the compact to turn over the collected fees if the fees were found impermissible. 124 F.3d at 1053. *Cabazon* is analogous to the present circumstances.
>
> Jurisdiction exists under both 25 U.S.C. § 2710(d)(7)(A)(ii) and 28 U.S.C. § 1331.

Doc. 48 at 5-6. Now, the Davis Council cites for the first time to *Michigan v. Bay Mills Indian Community*, 134 S.Ct. 2024 (2014),[2] for the proposition that there is "absolutely no room for the

---

[2] The Court notes that *Bay Mills*, decided May 27, 2014, predates the initiation of this lawsuit.

3

argument that a violation of the public safety provision of Section 10.1 of the Compact constitutes a violation of the playing of the games authorized under the Compact." Doc. 105 at 11. The Court does not agree with this characterization of *Bay Mills*. In that case, the state of Michigan sued to enjoin the Bay Mills Indian Community ("Bay Mills Tribe") from engaging in gaming activities <u>off tribal land</u>. The Supreme Court found that in such a circumstance tribal sovereign immunity had not been abrogated by 25 U.S.C. § 2710(d)(7)(A)(ii), which allows a State to sue in federal court to "enjoin a class III gaming activity located <u>on Indian lands</u> and conducted in violation of any Tribal–State compact ... that is in effect." 134 S.Ct. at 2028-29. Michigan attempted to argue that its suit fit within § 2710(d)(7)(A)(ii) because the Bay Mills Tribe "authorized, licensed, and operated" its casino from within its own reservation. *Id*. at 2032. According to Michigan, "that necessary administrative action—no less than, say, dealing craps—is 'class III gaming activity,' and because it occurred on Indian land, this suit to enjoin it can go forward." *Id*.

      The Supreme Court rejected this argument, offering a lengthy discussion of the meaning of "gaming activity" under the IGRA.

> [T]hat argument comes up snake eyes, because numerous provisions of IGRA show that "class III gaming activity" means just what it sounds like—the stuff involved in playing class III games. For example, § 2710(d)(3)(C)(i) refers to "the licensing and regulation of [a class III gaming] activity" and § 2710(d)(9) concerns the "operation of a class III gaming activity." Those phrases make perfect sense if "class III gaming activity" is what goes on in a casino—each roll of the dice and spin of the wheel. But they lose all meaning if, as Michigan argues, "class III gaming activity" refers equally to the off-site licensing or operation of the games. (Just plug in those words and see what happens.) See also §§ 2710(b)(2)(A), (b)(4)(A), (c)(4), (d)(1)(A) (similarly referring to class II or III "gaming activity"). The same holds true throughout the statute. Section 2717(a)(1) specifies fees to be paid by "each gaming operation that conducts a class II or class III gaming activity"—signifying that the gaming activity is the gambling in the poker hall, not the proceedings of the off-site administrative authority. And §§ 2706(a)(5) and 2713(b)(1) together describe a federal agency's power to "clos[e] a gaming activity" for "substantial violation[s]" of law—e.g., to shut down crooked blackjack tables, not the tribal regulatory body meant to oversee them. Indeed, consider IGRA's very first finding: Many tribes, Congress stated, "have licensed gaming activities on Indian lands," thereby necessitating federal

> regulation. § 2701(1). The "gaming activit[y]" is (once again) the gambling. And that means § 2710(d)(7)(A)(ii) does not allow Michigan's suit even if Bay Mills took action on its reservation to license or oversee the Vanderbilt facility.

134 S.Ct. at 2032-33. This reasoning stands only for the proposition that off site administration of gaming activity is not gaming activity. It speaks not one word to the question of whether or not a Tribal-State Compact may be conditioned upon conducting gaming activities in a manner that protects public health, safety, and welfare. Nor does it speak to whether a district court may adjudicate disputes over any such public safety Compact condition. The Court finds that *Bay Mills* provides no basis for it to alter its previous rulings on jurisdiction.

The Davis Council raises several other issues that were addressed (and essentially adopted) by the Court in the Judgment and Permanent Injunction. For example, the Davis Council argues that the Court has no jurisdiction to exclude its members from the Government Complex. The Court modified the proposed Judgment and Permanent Injunction to avoid doing so. *See* Doc. 102 at 13-16.[3]

Finally, the Davis Council objects that due process requires the Court to provide a full and fair opportunity to respond to the Request and to fully brief the issues presented therein. Doc. 105 at 18. The Court has, consistent with Local Rule 144(e), found good cause exists to shorten time for decision on the Request. The Court has also received and fully considered the Davis Council's objections. The objections that pertain to any possible "property interest" held by Davis Council members (e.g., their purported right to access the Government Complex) have been adopted by the Court. The only objection that has not been adopted by the Court is a purely legal objection to this Court's jurisdiction. As discussed above, that objection previously has been heard and rejected, and the Court finds no basis upon which to revisit its prior rulings on that subject. The Davis Council has not been prejudiced by the expedited treatment of the Request and has not been deprived of any property interest without due

---

[3] In contrast to the Distributees, the Davis Council does not object to the extension of the weapons ban to the Government Complex. *Compare* Doc. 101 at 5 (Distributees implying objection to 1000 ft. perimeter weapons ban) *with* Doc. 105 at 17 (Davis Council disclaiming such an objection).

process of law.

Accordingly, and for the reasons set forth above, the Court finds there is no need to modify the Judgment and Permanent Injunction in light of the Davis Council's objections.

**IT IS SO ORDERED**
**Dated: December 22, 2015**

                                              <u>/s/ Lawrence J. O'Neill</u>
                                              **United States District Judge**